IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| STEVEN C. DERK, ) | |
| ) | |
| Plaintiff, ) | 2:21-CV-00657-CRE |
| ) | |
| vs. ) | |
| ) | |
| SUPER. MICHAEL J. ZAKEN, SCI- ) | |
| GREENE; DEP. SUPER. STEPHEN ) | |
| BUZAS, SCI-GREENE; CO.1 D.N. HYDE, ) | |
| SCI GREENE; SGT./LT. LARRY BOWLIN, ) | |
| SCI GREENE; U.M. STEVEN ) | |
| LONGSTRETH, SCI GREENE;  CPT. ) | |
| HITMYER,  CPT. MORRIS,  SGT. ) | |
| MICHELUCCI, CO.1  HONSAKER, ) | |
| (HEARING EX. ESCORT) - SCI GRN; ) | |
| CO.1  GORDON, (HEARING EX. ) | |
| ESCORT) - SCI GRN; B. RUDNIEZSKI, PA ) | |
| D.O.C. HEARING EX - SCI GRN;  U.M. ) | |
| MALANOSKI, ZACHARY J. MOSLAK, ) | |
| PA D.O.C. CHIEF HEARING EX.; AND ) | |
| MAJOR MARTIN SWITZER, ) | |
| ) | |
| Defendants, ) | |

**MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.     INTRODUCTION

Plaintiff Steven C. Derk is currently an inmate incarcerated by the Pennsylvania Department of Corrections at State Correctional Institution ("SCI") at Forest.  This civil action was initiated by Plaintiff against several prison-official Defendants alleging various civil rights violations in connection with his incarceration at SCI Greene. This Court has subject matter

---

[1]     All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

jurisdiction under 28 U.S.C. § 1331.

Plaintiff filed his Third Amended Complaint on May 10, 2022 (ECF No. 86). Presently before the Court is Defendants' motion to dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 88). The motion is fully briefed and ripe for disposition. (ECF Nos. 89, 91).

For the reasons that follow, Defendants' motion to dismiss is granted in its entirety and Plaintiff's Third Amended Complaint is dismissed with prejudice.

## II.   BACKGROUND

Plaintiff's Third Amended Complaint names fourteen DOC officials and employees employed by the Pennsylvania Department of Corrections as Defendants. While Plaintiff does not explicitly set forth causes of action against each of these Defendants in his Third Amended Complaint, in his Second Amended Complaint he specifically alleges the following claims:

(1) A First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Defendants Zaken, Buzas, Hyde, Bowlin, Morris, Longstreth, Switzer, Hitmyer, and Michelucci;

(2) A Sixth Amendment claim pursuant to 42 U.S.C. § 1983 against Defendants Rudniezski and Moslak;

(3) An Eighth Amendment cruel and unusual punishment claim pursuant to 42 U.S.C. § 1983 against Defendants Hyde, Bowlin, Hitmyer, Morris and Michelucci; and

(4) A Fourteenth Amendment due process claim pursuant to 42 U.S.C. § 1983 against Defendants Zaken, Buzas, Honsaker, Gordon, Rudniezski, Malanoski, and Moslak.

Given the leniency afforded to pro se litigants, the Court will consider Plaintiff as having asserted the claims set forth in his Second Amended Complaint as asserted herein.[2] Plaintiff also

---

[2]      This interpretation is consistent with Plaintiff's operative pleading – his Third Amended

names all Defendants in their individual and official capacities.

It is difficult to determine from Plaintiff's narrative-form Third Amended Complaint the factual basis of his causes of action, as he includes mostly superfluous generalizations about prison life and does not include specific factual averments that support his alleged causes of action. Nonetheless, the Court will attempt to glean from Plaintiff's operative pleading the factual basis of his claims.

Plaintiff generally alleges that he made complaints that Black inmates were being assigned jobs instead of him, including filing a grievance against Defendants Hyde and Bowlin on May 2, 2020. He claims that on that same day he recounted an incident to Defendant Hyde in which a female corrections officer was sexually assaulted by an inmate at SCI-Rockview and warned her that if she were not careful the same could happen to her. He claims that he was retaliatorily placed in disciplinary segregation, or the Restricted Housing Unit ("RHU") on May 7, 2020 and given a misconduct on May 13, 2020 for making these comments about the sexual assault of another female corrections officer by an inmate to Defendant Hyde, but these actions were in retaliation for his filing a grievance against Defendants Hyde and Bowlin about him not being assigned a job.

Along with these summarized allegations, Plaintiff provides the following specific allegations against each Defendant:

Plaintiff claims that Defendant Superintendent Zaken retaliated against Plaintiff in violation of the First Amendment for filing grievances related to medical indifference. It appears that Plaintiff alleges that he was given a misconduct and was housed in the Administrative Unit

---

Complaint – as it generally references violations of the First, Sixth, Eighth and Fourteenth Amendments. (ECF No. 86 at p. 3).

or another disciplinary segregation unit from May 7, 2020 to July 2, 2020, or a period of approximately 56 days. (ECF No. 78 at p. 29).  He further alleges that Defendant Superintendent Zaken violated his Fourteenth Amendment rights because he claims it would be impossible for Defendant Superintendent Zaken to adequately respond to his grievance as fast as he did.

Plaintiff alleges that Defendant Buzas, the Deputy Superintendent of SCI-Greene, ignored Plaintiff's requests to speak to him and reviewed a grievance "concerning racial issues staff were allowing by them allowing the [B]lack inmates to dictate and control who was given job's(sic) on the unit" and that Plaintiff complained about unspecified illegal activity on the unit to Defendant Buzas and Defendant Buzas informed Plaintiff that he would have security interview Plaintiff but that never happened and this violated his Fourteenth Amendment rights. (ECF No. 86 at 7). Plaintiff claims his First Amendment rights were violated when he filed his grievance and Defendant "Zaken held authority to get to the truth of this matter, but chose to give it blind-eye." (ECF No. 86 at 7).

Plaintiff alleges that he complained to Defendant Corrections Officer Hyde about other inmates getting jobs over him, warned Defendant Hyde that she could be sexually assaulted by inmates, and she should "open her eyes" and was issued a misconduct for this interaction. (ECF No. 86 at 8).  He claims that this misconduct violated his First and Eighth Amendment rights because he did not mean that Defendant Hyde was going to be sexually assaulted by an inmate.

Plaintiff alleges that Defendant Bowlin violated his First and Eighth Amendment rights because Plaintiff complained about alleged unspecified corruption at SCI Greene to Defendant Bowlin, and because of this, Defendant Bowlin was somehow complicit in Plaintiff being given a misconduct in connection with the incident between Plaintiff and Defendant Hyde in which Plaintiff made the comments about sexual assault of a corrections officer.

4

Plaintiff alleges that he complained to Defendant Longstreth that the institution mainly gave jobs to Black inmates and Defendant Longstreth told Plaintiff to "stop the racial remarks" and that the hiring decisions had nothing to do with race, and that he did not like Plaintiff, and this violated Plaintiff's First Amendment rights.

Plaintiff alleges that Defendant Switzer was present when Plaintiff complained about unspecified corruption in the institution, and this made Defendant Switzer complicit in the misconduct being issued against him and violated his First Amendment rights.

Plaintiff alleges that Defendant Hitmyer violated his First and Eighth Amendment rights by not being interviewed by security for complaining about institution corruption and he was somehow involved in the misconduct being issued against Plaintiff.

Plaintiff alleges that he wrote unspecified complaints to Defendant Morris and that Plaintiff's sister called Defendant Morris and asked why Plaintiff was placed in administrative custody and Defendant Morris told her that Plaintiff requested protective custody which Plaintiff claims is not true and claims that this violated his First and Eighth Amendment rights.

Plaintiff alleges that he believes Defendant Michelucci was involved in Plaintiff being given the misconduct because he had an "issue" with Plaintiff and "never hid that fact" and this violated Plaintiff's First and Eighth Amendment rights.

Plaintiff alleges that Defendant Honsaker escorted Plaintiff to his misconduct hearing and did not give Plaintiff an "inmate version" of his misconduct form and therefore violated Plaintiff's Fourteenth Amendment rights.

Plaintiff alleges that Defendant Gordon also escorted Plaintiff to his misconduct hearing and because she did so, she was involved in not providing Plaintiff with the "inmate version" of his misconduct and therefore violated his Fourteenth Amendment rights.

Plaintiff alleges that Defendant Rudniezski was the hearing examiner for his misconduct hearing and refused to allow Plaintiff to call Defendant Hyde as a witness and refused to review unit footage and this violated his Sixth and Fourteenth Amendment rights.

Plaintiff alleges that Defendant Malanoski violated his Fourteenth Amendment rights by allowing an unidentified security officer present at a Program Review Committee hearing and alluded to Plaintiff's incarceration at SCI at Rockview.

Plaintiff alleges that Defendant Moslak wrongfully denied his misconduct appeal by stating that Plaintiff did not file the appeal on the correct forms, and this violated Plaintiff's Sixth and Fourteenth Amendment rights.

Plaintiff seeks punitive damages, for the misconduct to be removed and dismissed from his record, for the Pennsylvania Department of Corrections to terminate Defendants' employment and for his "free time" to be restored.

### III. STANDARD OF REVIEW

#### a. Pro Se Litigants

A pro se pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). As a result, a pro se complaint under § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). While pro se litigants are afforded this leniency, they "do not have a right to general legal advice from judges," and "courts need not provide substantive legal advice to pro se litigants" because pro se litigants must be treated "the same as any other litigant." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

While 28 U.S.C. § 1915 authorizes litigants like Plaintiff to proceed *in forma pauperis*, such status is a privilege which may be denied when abused. After granting *in forma pauperis* status, the Court must dismiss any claims *sua sponte* if: "(i) the allegation of poverty is untrue; (ii) the action is frivolous or malicious; (iii) the complaint fails to state a claim upon which relief may be granted; or (iv) the complaint seeks money damages from a defendant who is immune from suit." 28 U.S.C. § 1915(e)(2).

    b. *Federal Rule of Civil Procedure 12(b)(6)*

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). Yet the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132

7

F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp.*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 555.  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp.*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).  The court does not consider whether a plaintiff will ultimately prevail. *Id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, the motion must be converted into one for summary judgment. *In*

8

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents integral to or explicitly relied on in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. *Mele v. Fed. Rsrv. Bank of New York*, 359 F.3d 251, 256 (3d Cir. 2004) n. 5 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV. DISCUSSION

Defendants move to dismiss Plaintiff's claims on myriad grounds, each of which will be discussed seriatim.

### a. Eleventh Amendment

Defendants argue they are entitled to immunity under the Eleventh Amendment for all of Plaintiff's official capacity claims.

The Eleventh Amendment provides that federal courts have no power to hear suits against non-consenting states, thus making states immune from suit in federal courts. *Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890)). The Commonwealth of Pennsylvania has waived its immunity in federal courts with narrow exception, none of which apply here.[3] 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh

---

[3] The Pennsylvania General Assembly has waived sovereign immunity in nine instances: "(1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines." 42 Pa. Cons. Stat. Ann. § 8522(b).

9

Amendment to the Constitution of the United States."). This immunity extends to individual state employees sued in their official capacity for monetary or retroactive equitable relief. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("official-capacity suits generally represent only another way of pleading an action" against the Commonwealth.); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (same). As Defendants are all individual state employees sued in their official capacities for monetary damages and/or retroactive equitable relief, Plaintiff's official capacity claims are dismissed with prejudice as amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (leave to amend shall be granted under the *in forma pauperis* statute unless amendment would be inequitable or futile).

    b. <u>Sixth Amendment</u>

Plaintiff asserts Sixth Amendment claims against Defendants Rudiezski and Moslak. The Sixth Amendment does not apply in civil proceedings and the right only applies to criminal proceedings. *Kirby v. Illinois*, 406 U.S. 682, 689–90, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). Therefore, Plaintiff's Sixth Amendment claims against Defendants Rudiezski and Moslak are dismissed with prejudice as amendment would be futile. *Grayson*, 293 F.3d at 114.

    c. <u>Eighth Amendment</u>

Plaintiff asserts an Eighth Amendment claim against Defendants Hyde, Bowlin, Hitmyer, Morris and Michelucci for when he was issued a misconduct by Defendant Hyde, alleges that Defendants Hyde and Bowlin acted together and that Defendants Hitmyer, Morris, and Michelucci were "involved" in the joint effort to issue the misconduct, which led to Plaintiff being housed in administrative segregation, or the Restricted Housing Unit ("RHU") for approximately fifty-six days.[4] The sole allegation that Plaintiff was placed in the RHU for fifty-six days, without more,

---

4    While Defendants allege that Plaintiff was housed in the RHU for a period of thirty days,

does not rise to the level of an Eighth Amendment violation. To analyze whether prison officials violate the Eighth Amendment, courts apply a two-prong test: "(1) the deprivation must be objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities; and (2) the prison official must have been deliberately indifferent to inmate health or safety." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020). Applicable here, "punitive isolation" like placement in a restricted housing unit is not per se unconstitutional, "but it may be, depending on the duration of the confinement and the conditions." *Hutto v. Finney*, 437 U.S. 678, 685, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978). Plaintiff offers no facts sufficient to draw any reasonable inference that he was denied any basic human needs, like food, clothing, shelter, sanitation, medical care, or personal safety, *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997), or that he was confined to the RHU for an atypical amount of time to spend in disciplinary custody. *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002). *See also Bailey v. Kauffman*, No. 21-3357, 2022 WL 1115136, at *2 (3d Cir. Apr. 14, 2022) (affirming dismissal of inmate's Eighth Amendment claims where inmate did not allege the denial of basic human needs or he suffered an infliction of pain or injury, or a deliberate indifference to the risk that it may occur for spending 45 days in disciplinary custody). Accordingly, Plaintiff's Eighth Amendment claim against Defendants Hyde, Bowlin, Hitmyer, Morris and Michelucci are dismissed with prejudice as amendment would be futile and inequitable. *Grayson*, 293 F.3d at 114.

    d. <u>Fourteenth Amendment</u>

Plaintiff alleges that Defendants Zaken, Buzas, Honsaker, Gordon, Rudneizski, Malanoski

---

considering Plaintiff's previous iterations of his complaint, the Court will consider that Plaintiff was housed in the RHU for a period of fifty-six days from May 7, 2020 to July 2, 2020. (ECF No. 78 at p. 29).

11

and Moslak violated his due process rights under the Fourteenth Amendment. He alleges that Rudniezski held a disciplinary hearing without reviewing video footage or allowing Plaintiff to cross-examine Defendant Hyde. He alleges that Defendants Zaken and Moslak denied his misconduct appeals and that Defendants Honsaker and Gordon did not provide Defendant Rudniezski with "inmate copies" of unspecified paperwork and Plaintiff had to give Defendant Rudniezski additional copies. After Plaintiff was found guilty of the misconduct, he was housed in the RHU for approximately fifty-six days.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of the procedures that it employs." *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (quoting *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000)). This "guarantee[s] protect[ion] against government power arbitrarily and oppressively exercised." *Steele*, 855 F.3d at 501 (quoting *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009)). To maintain a substantive due process claim, Plaintiff must establish that he has been deprived of a particular interest that "is protected by the substantive due process clause." *Steele*, 855 F.3d at 501.

For courts analyzing a procedural due process claim pursuant to the Fourteenth Amendment, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)). Once a court determines "that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). "The Supreme Court has

repeatedly stated that '[t]he core of due process is the right to notice and a meaningful opportunity to be heard'." *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007) (quoting *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S. Ct. 753, 139 L. Ed. 2d 695 (1998)).

In the context of punitive disciplinary segregation in prisons, a prisoner has no liberty interest under the Fourteenth Amendment unless he has adequately alleged that his confinement presents "the type of atypical, significant deprivation" that creates a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 486, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). This is because "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. . . . Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* (citations and quotation marks omitted). Approximately fifty-six days of disciplinary confinement does not on its own violate a protected liberty interest. *See Sandin*, 515 U.S. at 485 (30 days of disciplinary segregation does not implicate a protected liberty interest); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months of disciplinary confinement does not violate a protected liberty interest even where inmate alleged disciplinary confinement was borne out of an allegedly fabricated misconduct); *Griffin*, 112 F.3d at 708 (fifteen months of disciplinary segregation does not violate a protected liberty interest). Therefore, Plaintiff offers no facts sufficient to draw any reasonable inference that his placement in disciplinary segregation implicated a liberty interest protected by the Fourteenth Amendment and therefore his Fourteenth Amendment claims are dismissed with prejudice as amendment would be futile and inequitable. *Grayson*, 293 F.3d at 114.

    e. <u>First Amendment Retaliation</u>

Plaintiff alleges that Defendants Zaken, Buzas, Hyde, Bowlin, Morris, Longstreth, Switzer,

Hitmyer and Michelucci retaliated against him in violation of the First Amendment. Plaintiff alleges that he filed a grievance against Defendants Hyde and Bowlin on May 2, 2020 alleging that Black inmates were getting job placements over him. That same day, Plaintiff alleges that he made comments about a female corrections officer being sexually assaulted by an inmate to Defendant Hyde. Plaintiff was placed in the RHU on May 7, 2020 and issued a misconduct on May 13, 2020 by Defendant Hyde for the inappropriate comments made to her. Plaintiff claims that the placement in the RHU and misconduct were in retaliation for filing a grievance against Defendants Hyde and Bowlin for not giving him a job.

> i. *Personal Involvement*

"A plaintiff raising a claim under Section 1983 must allege a violation of a right secured by the Constitution or the laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Wilkins v. Berks Cnty. Jail Sys.*, No. CV 15-5448, 2017 WL 2591943, at *4 (E.D. Pa. June 14, 2017). To establish personal liability against a defendant in a section 1983 action, the defendant must have personal involvement in the alleged wrongs. That is, the state actor must have played an affirmative part in the alleged misconduct to be subject to liability. *Rizzo v. Goode*, 423 U.S. 362, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976); *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Defendants argue that Plaintiff's Third Amended Complaint only alleges claims against Defendants Zaken, Buzas, and Longstreth for responding to Plaintiff's request slips and/or grievances and this is not enough to show personal involvement in a section 1983 claim, including Plaintiff's First Amendment retaliation claim. Defendants are correct. "[S]imply reviewing and denying grievances does not satisfy the 'personal involvement' requirement for section 1983

claims." *Woodell v. Weiner*, No. CV 18-1098, 2020 WL 5294308, at *11 (E.D. Pa. Sept. 4, 2020) (collecting cases). Plaintiff offers no facts sufficient to draw any reasonable inference that Defendants Zaken, Buzas, or Longstreth violated or conspired to violate Plaintiff's rights under the First Amendment. Plaintiff alleges that Zaken responded to his grievance too quickly, that Buzas failed to have security interview him after he filed a grievance, and that Longstreth told him to stop racially-related remarks when Plaintiff complained about Black inmates getting job assignments, none of which if taken as true allege sufficient personal involvement in any alleged constitutional violation. Accordingly, Plaintiff's First Amendment claims against Defendants Zaken, Buzas, and Longstreth are dismissed with prejudice, as amendment would be futile and inequitable, as Plaintiff was given three opportunities to previously amend his complaint. *Grayson*, 293 F.3d at 114.

As for Defendants Morris, Switzer, Hitmyer and Michelucci, Plaintiff does not allege sufficient facts which if taken as true support any personal involvement of these Defendants in the alleged retaliation of Plaintiff's First Amendment rights. Plaintiff claims he wrote unspecified complaints to Defendant Morris, that Defendant Switzer was present when Plaintiff complained about unspecified corruption, that Defendant Hitmyer did not have security interview Plaintiff after he complained about unspecified corruption, and that Defendant Michelucci had an "issue" with Plaintiff. Such general and conclusory allegations do not support a finding that these Defendants participated in or played an affirmative part of any alleged constitutional violation Plaintiff allegedly suffered. Not every interaction an inmate has with a prison official constitutes personal involvement for section 1983 purposes; an inmate must allege sufficient facts that the prison official participated in the alleged constitutional violation, which Plaintiff has failed to do here. Instead, he relies on conclusory and attenuated allegations to support his claims, which is

15

insufficient to survive a motion to dismiss. Therefore, Plaintiff's First Amendment retaliation claims against Defendants Morris, Switzer, Hitmyer and Michelucci are dismissed with prejudice as amendment would be futile and inequitable as Plaintiff was given three opportunities to previously amend his complaint. *Grayson*, 293 F.3d at 114.

### ii. Defendants Hyde and Bowlin

Defendants next argue that Plaintiff fails to state a claim for First Amendment retaliation because he has not alleged a sufficient causal link between the filing of his grievance and the adverse action.

Again, Plaintiff alleges that he filed a grievance on May 2, 2020 against Defendants Hyde and Bowlin for not being given a job. That same day, Plaintiff claims that he recounted a story to Defendant Hyde about a female corrections officer being sexually assaulted by an inmate at another facility and that she should be careful that it does not happen to her. Defendant Hyde thereafter issued Plaintiff a misconduct for Plaintiff's comments and the misconduct Plaintiff was given stated that it was issued because Plaintiff told Defendant Hyde that she was "going to be raped by one of the [B]lack block workers" and that "if given the chance [Plaintiff] would." (ECF No. 78-1, pp. 4, 8). Plaintiff disputes the misconduct's characterization of events. Thereafter, on May 7, 2020, Plaintiff was placed in the RHU and issued a misconduct on May 13, 2020 following an investigation. (ECF No. 78-1 at p. 4).

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). "To state a First Amendment retaliation claim, a prisoner plaintiff must allege (1) that the conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of the prison officials; and (3) a

causal link between the [protected conduct] and the adverse action [in that the] conduct was a substantial or motivating factor in the decision to take that action." *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (quotation marks omitted).

Here, it will be presumed that the first two prongs are met, as Plaintiff's act of filing a grievance is considered a constitutionally protected activity, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), and being issued a misconduct and being transferred to the RHU can be considered adverse actions. *See Goodman v. Miceli*, No. CV 20-1259, 2021 WL 2117933, at *13 (W.D. Pa. May 3, 2021), report and recommendation adopted, 2:20-CV-01259, 2021 WL 2115328 (W.D. Pa. May 25, 2021) (finding that misconduct charges and RHU placement constituted adverse actions for First Amendment retaliation claim). Therefore, the Court will consider whether causation exists.

A causal connection for a First Amendment retaliation claim exists where there is "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Instantly, Plaintiff has not alleged a pattern of antagonism, as he claims he was issued one misconduct and placed in the RHU from that misconduct. Likewise, he has not sufficiently alleged facts that support an inference of an unusually suggestive temporal proximity between Plaintiff filing his grievance and the issuance of the misconduct and placement in the RHU. While Plaintiff's act of filing a grievance, being issued a misconduct and being placed in the RHU all happened within approximately eleven days of each other, proximity alone does not establish causation, especially when Plaintiff has admitted to the behavior for which he was issued a misconduct and has alleged no other facts that suggest any retaliatory animus. Similarly, in *Burton v. Giroux*, 794 F. App'x 196, 198 (3d Cir. 2019)

17

(unpublished), the Court of Appeals for the Third Circuit affirmed the dismissal of a prisoner's First Amendment retaliation claim for failing to adequately allege causation where the prisoner admitted to the conduct underlying the alleged retaliatory issuance of a misconduct. The Court of Appeals noted that the prisoner "bears the initial burden of alleging some reason to believe that his threat to file a complaint [i.e., his protected conduct] played a role in [the prison official's] decision to charge him [with a misconduct]." *Id.* Plaintiff was given a misconduct for making inappropriate comments about another female prison official being sexually assaulted by an inmate to Defendant Hyde. He admits making such comments in his complaint.[5] While Plaintiff admitting the conduct underlying his misconduct does not necessarily preclude a retaliation claim, *see Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016), he has provided no allegations supporting a reason to believe that his grievance against Defendants Hyde and Bowlin played any role in the decision to charge him with a misconduct for making inappropriate comments about the sexual assault of a female prison official by an inmate to Defendant Hyde. Accordingly, Plaintiff has failed to state a First Amendment retaliation claim against Defendants Hyde and Bowlin and this claim is dismissed with prejudice, as amendment would be futile and inequitable as Plaintiff was given three opportunities to previously amend his complaint. *Grayson*, 293 F.3d at 114.

## V.     CONCLUSION

Based on the foregoing, Defendants' motion to dismiss (ECF No. 88) is granted and Plaintiff's Third Amended Complaint is dismissed with prejudice in its entirety.

An appropriate Order follows.

---

[5] In his present iteration of his complaint, Plaintiff alleges that he informed Defendant Hyde that "a young secretary [at SCI Rockview] was violently raped by a [B]lack inmate unit worker, and that some of the inmates she surrounds herself [with] are just as capable of that act. CO. Hyde did not care for it, when the Plaintiff stated that . . . [and] Plaintiff solely informed CO. Hyde to start opening her eyes." (ECF No. 86) at 8.

DATED this 21st day of December, 2022.

BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge

cc: Steven Derk
CE-3076
SCI Forest
P.O. Box 945
286 Woodland Drive
Marienville, PA 16239

all counsel of record *via CM/ECF electronic filing*